IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| TECHNICON SYSTEMS, INC. | ) |
| | ) |
| Plaintiff, | ) Case No. 8:21-cv-_____ |
| | ) |
| vs. | ) |
| | ) |
| VALMONT INDUSTRIES, INC., ANIL S. PALLAYIL, an individual, | ) **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| | ) |
| Defendants. | ) |
| | ) |

COMES NOW the Plaintiff, Technicon Systems, Inc., by and through its attorney, and for its Complaint against Defendants Valmont Industries, Inc., and Anil S. Pallayil, states and alleges as follows:

## NATURE OF ACTION

1. This action involves claims for breach of contract, misappropriation of trade secret information, unfair competition, and unjust enrichment.

## PARTIES

2. Plaintiff Technicon Systems, Inc. ("Technicon") is a corporation organized under the laws of and registered to do business in the state of California with its principal place of business in Oakland, California.

3. Defendant Valmont Industries, Inc. ("Valmont") is a corporation organized under the laws of the state of Delaware, and based on information and belief registered to do business and doing business in the state of Nebraska. On information and belief, Plaintiff alleges that Valmont Industries, Inc.'s principal place of business is Omaha, Nebraska.

4. Defendant Anil S. Pallayil ("Pallayil") is an individual who at all times relevant hereto was a resident and citizen of the state of Nebraska. Defendant Pallayil is and has been an employee of Valmont working as a Senior Director of Engineering and Technology.

## JURISDICTION AND VENUE

5. Jurisdiction of this matter is predicated on diversity of citizenship, 28 U.S.C. Section 1332, wherein the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

6. This Court has personal jurisdiction over all Defendants because all Defendants do substantial business in this District and the contract that is the subject of this dispute was to be performed here. In addition, Technicon and Valmont entered into a Nondisclosure Agreement whereunder certain confidential information was disclosed to Valmont and wherein the parties designated this jurisdiction as the forum for dispute resolution.

7. Venue is proper under 28 U.S.C. Section 1391(b) because a substantial part of the events giving rise to this action occurred in this judicial District; and 28 U.S.C. Section 1391(c) because the natural person defendant Pallayil resides in this judicial District.

## BACKGROUND FACTS

### Technicon and Valmont

8. Technicon sells web-based system software used by a variety of manufacturing companies to assist in their sales efforts. Technicon has more than 20 years of experience developing and deploying sales automation, visualization and e-commerce systems for use across various business and technology sectors.

9. Valmont is a producer and distributor of products and services for the infrastructure and agricultural markets. According to its website at www.valmont.com, Valmont's primary

business segments comprise engineered supports structures, coatings, irrigation, and utility support structures. Valmont is a publicly traded company on the New York Stock Exchange under the symbol (VMI).

10. In early 2018, Valmont solicited Technicon to bid on the Configure Price and Quote (CPQ) project, including software development and professional services, for the implementation of a Valmont Configure, Price and Quote (CPQ) system. CPQ falls in a class of enterprise software used by large corporations such as Valmont to assist in their sales efforts. End-users of CPQ systems are typically sales people, distributors and dealers and/or internal customer service or engineering personnel using the software to configure, price, and quote products.

11. Valmont was contemplating deploying a Tacton CPQ system which is resold by Technicon. Tacton is a leading CPQ software supplier and its software helps manufacturers like Valmont improve sales efficiency thereby increasing volume and profit. Valmont requested Technicon's assistance in setting up the CPQ system to meet their unique product offering and the needs of their business processes.

12. The parties negotiated and entered into a 3-page nondisclosure agreement ("NDA") executed by Mark Keenan, Director of Business Development for Technicon and Anil S. Pallayil, Senior Director Engineering for Valmont.

13. Under the terms of the NDA, the parties agreed and acknowledged that as part of the work, certain confidential information might be disclosed and that such information should be kept confidential between them. As defined under the NDA, confidential information included:

> "all documents, materials, information, ideas, concepts, business plans, proposals, names or resources, business records, financial information, customer lists and related customer information, marketing plans or materials, product or equipment, software programs, drawings, designs, models, samples, specifications, calculations, methods processes, procedures, applications, technology, know-how, techniques, selling methods, logistical information and the like."

14. Further under the terms of the NDA, the parties agreed that the use of designated confidential information would be solely for evaluation as contemplated under the agreement and that any receiving party would restrict disclosure of the information only to those employees and advisors of the receiving party with immediate need to know such information in connection with the evaluation of the proposed transaction. Attached hereto as **Exhibit A** is a true and correct copy of the 2018 NDA entered into between the parties.

15. Relying on these representations from Valmont, with the promise that the information, technical know-how and processes conveyed to Valmont by Technicon would be kept confidential per the terms of their NDA, Technicon moved deliberately toward developing a detailed proposal for the implementation of the Valmont CPQ system.

16. Months of man hours went into Technicon's work evaluating Valmont's technical information, compiling the necessary points of data and process for production of the CPQ system including CPQ setup, product modeling processes, Computer Aided Design (CAD) enhancements, and 3D visualization. CPQ setup, for example, involves taking large amount of customer (in this case Valmont) specific data and integrating that information into the CPQ software so that Valmont proposals can be readily and accurately configured, priced, and quoted. Product modeling involves loading data for the multitude of different product and product lines that may be included in a particular quotation. With respect to Valmont's CPQ system needs as it pertains to outdoor lighting, information such as pole height, construction materials, engineering requirements, lumination, and other data points would be necessary for competent product modeling. Computer, Aided, Design (CAD) enhancements and 3D visualization in the CPQ system allow stakeholders and customers to see 3D imagery of the configured products.

Technicon has unique expertise integrating the CPQ software and CAD software programs and it is one of the reasons Valmont originally contacted Technicon for this project.

17. Technicon staff also made several trips to Nebraska to meet with Valmont employees in gathering the necessary information and detail in order to develop the CPQ. All of this was done without compensation but with the expectation that ultimately Valmont would purchase the Tacton software which is resold by Technicon and that Technicon would be awarded the contract to assist in the deployment of the Valmont CPQ system.

## Valmont Phase 1 CPQ

18. Technicon's time and effort ultimately led to the production of a 23 page "Valmont phase 1 CPQ" document that was provided to Valmont for consideration in August 2018. The document is extremely detailed and coalesces all the information and processes for the implementation and production of the Valmont CPQ system, including CPQ setup, and estimated costs associated therewith. The document is essentially a blueprint for the work to be performed, and brings to bear Technicon's technical expertise and know-how on the information collected and the processes necessary for system production of this magnitude. The CPQ Configuration section of the document sets out a step-by-step process for development and implementation of the system, identifying deliverables for both Technicon and Valmont and the estimated hours to each item. Similarly, the configuration model development section details the necessary points of data needed for planning, process definition, model development, constraint definition, and drawing creation. Finally, the phase I product inventory section identifies each assembly module needed in production allowing for variations in material, thickness, length, mounting, and other specifics. This section also includes comments and questions for further refinement in the development process.

19. The information contained in the Valmont phase 1 CPQ document and organization of the information and instructive information contained therein was developed by Technicon in the ordinary course of its business. The Valmont phase 1 CPQ document has independent economic value, and constitutes a trade secret and confidential information.

20. The information and the layout of same contained in the Valmont phase 1 CPQ document is valuable, and Technicon has taken reasonable steps to maintain its confidentiality. The information as evaluated and organized in the form of the Valmont phase 1 CPQ document is not available to the general public or Technicon's competitors.

21. The Valmont phase 1 CPQ document was delivered to Valmont by Technicon on August 12, 2018 via email delivered to Anil Pallayil, Tristan Slater and Jeremy Eis. Every page of the Valmont phase 1 CPQ was marked, pursuant to the terms of the NDA, as "Technicon Confidential". Technicon understood that award of the contract was not dependent on the sale of the CPQ license. It is also understood that under the terms of the NDA, the information, process and technical knowhow brought to bear by Technicon in developing the Valmont phase 1 CPQ document would not be shared with others including Technicon's competition.

## Valmont's Breach of the NDA

22. On or about September 20, 2018 Technicon was contacted by another technology company requesting Technicon's assistance in preparing a response to a request for proposal that company had recently received from Valmont for professional services associated with the CPQ deployment. Technicon was then provided with the "V1 CPQ-Phase 1 (ESS) Request" which had apparently been sent out by Valmont to other technology companies, but not Technicon, for bid.

23. After reviewing the V1 CPQ-Phase I (ESS) Request, Technicon was shocked and dismayed to learn that the request included, in some parts through wholesale copying, large portions of its own Valmont phase 1 CPQ document that was written by Technicon but with the confidentiality designation conveniently deleted. In preparing the V1 CPQ-Phase 1 (ESS) Request, Valmont adopted not only the verbiage used by Technicon in the Valmont phase 1 CPQ document, but the order and analytical sequence for the process spelled out there as well. Valmont was essentially using Technicon's technical expertise and know-how in developing a system of this kind in its own proposal delivered to Technicon's competitors. Valmont's use of the phase 1 CPQ outline and proposal and dissemination of the information contained therein as developed by Technicon was done without Technicon's knowledge or consent.

24. Technicon is informed and believes and thereon alleges that pursuant to the V1 CPQ-Phase 1 (ESS) Request, Valmont ultimately contracted with a competitor of Technicon to deliver the professional services and develop the CPQ system.

### COUNT I
### Breach of Contract
### (Against Valmont)

25. Technicon incorporates by reference paragraphs 1-24 as though set out herein.

26. Technicon and Valmont are parties to the 2018 NDA. Defendant Anil S. Pallayil signed the NDA on behalf of Valmont.

27. Under the terms of the NDA, the parties agreed and acknowledged that as part of the work, certain confidential information might be disclosed and that such information should be kept confidential between them. Under the terms of the NDA, the parties, including defendant Valmont agreed that any confidential information disclosed would be used solely for the evaluation purposes contemplated between Technicon and Valmont. The parties also agreed to

restrict disclosure of the confidential information only to those employees or advisors of the receiving party who had an immediate need to know such information in connection with evaluation of the proposed transaction between Technicon and Valmont.

28. Pursuant to the terms of the NDA, Technicon marked every page of the Valmont phase 1 CPQ as "Technicon Confidential" to designate its contents as confidential.

29. Valmont breached and continues to breach the terms of the NDA in various ways, including delivering the V1 CPQ-Phase 1 (ESS) Request to Technicon's competitors disclosing Technicon's valuable technical expertise, acumen and know-how in developing and deploying CPQ systems of this type to Technicon's competitors.

30. The Defendants' material breaches of the NDA are the direct and proximate cause of damages to Technicon.

31. As a proximate result of the acts alleged above, Technicon has suffered actual damages in an amount to be proven at trial.

## COUNT II
### Misappropriation of Trade Secrets In Violation of Neb. Rev. Stat. §87-504
**(Against All Defendants)**

32. Technicon incorporates by reference paragraphs 1-31 as though set out herein.

33. As a result of the negotiation and conduct under the NDA, defendants Valmont and Pallayil came into possession of and were privy to certain confidential information of Technicon including, but not limited to, Technicon's information requirements and logistical process for the implementation and production of a complex CPQ system, including CPQ setup, and the associated costs therewith.

34. These trade secrets are not generally known to, or ascertainable by proper means by others and, on that basis, have independent economic value to Technicon.

35. Technicon has made, and continues to make, reasonable efforts to maintain the secrecy of its technical expertise, acumen and know-how in developing and implementing CPQ systems.

36. Defendants have used Technicon's trade secrets for their own benefit and without express or implied consent in soliciting bids for Valmont's V1 CPQ-Phase 1 (ESS) Request.

37. At the time they used such trade secrets, Defendants knew or had reason to know that they acquired the trade secrets under circumstances giving rise to a duty to maintain the secrecy or limit the use of such trade secrets, and that the trade secrets were derived from information received by Valmont who owed a duty to Technicon pursuant to the NDA to limit the use of such trade secrets.

38. Defendants' conduct constitutes misappropriation in violation of Nebraska Revised Statute §87-504.

39. As a proximate result of Defendants' conduct, Technicon has suffered and will continue to suffer damages in an amount to be proven at trial, but in no instance less than the jurisdictional minimum.

40. Technicon is entitled to injunctive relief, its actual losses and damages, and such other damages in excess of $75,000 as permitted by Nebraska Revised Statute § 87-504.

## COUNT III
## Violation of the Defend Trade Secrets Act
**(Against All Defendants)**

41. Technicon incorporates by reference paragraphs 1-40 as though set out herein.

42. As a result of the negotiation and conduct under the NDA, defendants Valmont and Pallayil came into possession of and were privy to certain confidential information of Technicon including, but not limited to, Technicon's information requirements and logistical process for the

implementation and production of a complex CPQ system, including CPQ setup, and the associated costs therewith.

43. These trade secrets are not generally known to, or ascertainable by proper means by others and, on that basis, have independent economic value to Technicon.

44. Technicon has made, and continues to make, reasonable efforts to maintain the secrecy of its technical expertise, acumen and know-how in developing and implementing CPQ systems.

45. Defendants have used Technicon's trade secrets for their own benefit and without express or implied consent in soliciting bids for Valmont's V1 CPQ-Phase 1 (ESS) Request.

46. At the time they used such trade secrets, Defendants knew or had reason to know that they acquired the trade secrets under circumstances giving rise to a duty to maintain the secrecy or limit the use of such trade secrets, and that the trade secrets were derived from information received by Valmont who owed a duty to Technicon pursuant to the NDA to limit the use of such trade secrets.

47. Defendants' conduct constitutes misappropriation in violation of the Defend Trade Secrets Act, Pub. L. No. 114-153, 130 Stat. 376.

48. As a proximate result of Defendants' conduct, Technicon has suffered and will continue to suffer damages in an amount to be proven at trial, but in no instance less than the jurisdictional minimum.

## COUNT IV
### Unfair Competition
**(Against Defendant Valmont)**

49. Technicon incorporates by reference paragraphs 1-48 as though set out herein.

50. Technicon invested substantial time, money, and resources developing its technical expertise, acumen and know-how for configuring and implementing CPQ systems of the type provided for under the "Valmont phase 1 CPQ" document.

51. As a result of the negotiation and conduct under the NDA, defendants Valmont and Pallayil came into possession of and were privy to certain confidential information of Technicon including, but not limited to, Technicon's information requirements and logistical process for the implementation and production of a CPQ system, including CPQ setup, and the associated costs therewith.

52. Valmont disclosed Technicon's technical expertise, acumen and know-how in developing and implementing CPQ systems, without authority or compensation, and knowing such information was meant to be kept confidential, when it circulated its V1 CPQ-Phase 1 (ESS) Request to Technicon's competitors for bid.

53. Nebraska Revised Statute § 59-1602 makes any methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce unlawful. Nebraska Revised Statute § 59-1609 provides that any person injured in his business or property by violation of sections 59-1602 to 59-1606 may bring a civil action in the district court to enjoin further violations.

54. By unlawfully disclosing Technicon's confidential and proprietary information, knowing Technicon expected it would be kept confidential, and using that information to solicit bids from Technicon's competitors for work that Technicon could itself accomplish, Valmont engaged in unfair competition.

55. As a proximate result of Defendants' conduct, Technicon has suffered and will continue to suffer damages in an amount to be proven at trial, but in no instance less than the jurisdictional minimum.

## COUNT V

### Unjust Enrichment

56. Technicon incorporates by reference paragraphs 1-55 as though set out herein.

57. By using Technicon's phase 1 CPQ document and the contents thereof for purposes not authorized under the NDA, and without any compensation of any kind to Technicon, Valmont has been unjustly enriched in that it obtained a substantial amount of valuable information related to configuration and strategic steps necessary to develop a CPQ system internally for Valmont without having incurred the cost and effort to obtain, organize, analyze and configure the confidential information in a format readily available and recognizable to Technicon's competitors.

58. Valmont's enrichment was at Technicon's expense.

59. Valmont was able to use Technicon's confidential and proprietary phase 1 CPQ document and the contents thereof to pursue opportunities with Technicon's competitors to the detriment of Technicon.

60. Valmont should be required to make restitution for the commercially reasonable value of the benefits received by utilizing Technicon's confidential and proprietary information without Technicon's knowledge or consent.

## COUNT VI

### Breach of the Implied Covenant of Good Faith and Fair Dealing

61. Technicon incorporates by reference paragraphs 1-60 as though set out herein.

62. As a party to the NDA and in reliance on the terms therein prior to disclosing confidential and proprietary information to Valmont, Technicon had the right to expect, and did reasonably expect, that Valmont would not later use the confidential and proprietary phase I CPQ and the contents thereof to solicit bids for the development of a CPQ for Valmont, thereby frustrating and depriving Technicon of the fruit and benefit of its services and the production of the confidential and proprietary information for Valmont.

63. Valmont's use of Technicon's confidential and proprietary phase 1 CPQ document and the contents thereof to obtain bids from Technicon's competitors to develop the CPQ system proposed by Technicon was unreasonable, and it frustrates the fruits of Technicon's time and effort in developing and distributing to Valmont a confidential phase 1 CPQ document. Valmont's conduct constitutes a breach of Valmont's implied covenant of good faith and fair dealing.

64. Valmont's breach of its covenant of good faith and fair dealing has caused Technicon damages in an amount to be proved at trial, caused by loss of the income Technicon reasonably expected to be generated from the development of the CPQ system designed by Technicon for Valmont, and the time and expense associated with development the phase 1 CPQ under the protections afforded by the NDA.

## **PRAYER FOR RELIEF**

WHEREFORE TECHNICON prays for:

A. An award of compensatory damages, in an amount to be determined at trial;

B. An award of punitive damages, in an amount to be determined at trial;

C. Disgorgement of Valmont's unjust enrichment caused by the misappropriation of Technicon's trade secret and confidential information;

D. Technicon's costs of suit;

E. An award of attorneys' fees; and

F. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial in Omaha on all issues raised by this Complaint and hereby provides notice to Defendants of such.

Dated: April 21, 2021.

                TECHNICON SYSTEMS, INC.,
                Plaintiff

BY: /s/ Paul M. Shotkoski #20873
Kevin R. Martin
California State Bar No. 176853
MARTIN APC
4200 Park Boulevard #656
Oakland, CA 94602
Phone: (510) 444-7600
kevin@martinapc.com
(PRO HAC VICE PENDING)

and

Paul M. Shotkoski #20873
Brian J. Fahey #25753
FRASER STRYKER PC LLO
409 S. 17th Street
500 Energy Plaza
Omaha, Nebraska 68102
Phone: (402) 341-6000
Facsimile: (402) 341-8290
pshotkoski@fraserstryker.com
bfahey@fraserstryker.com